KRAFT PHENIX CHEESE CORP. *v.* UNITED STATES (No. 3758)[1]

United States Court of Customs and Patent Appeals, May 2, 1934

*James W. Bevans* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[1] T. D. 47103.

[Oral argument April 5, 1934, by Mr. Bevans and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

GRAHAM, Presiding Judge, delivered the opinion of the court.

Certain Switzerland cheese was imported at the port of New York under the Tariff Act of 1930. This cheese was in large flat cakes, each weighing about 200 pounds, three or four of such cakes being placed in a large wooden tub, just large enough to contain the cheeses, laid in flat. The cheeses were not covered with anything except the tubs in which they were shipped. Each cheese was covered with a hardened rind, and was marked in conformity with the provisions of section 304 of the Tariff Act of 1930, to indicate its country of origin. There was, however, no such marking upon the tubs.

Thereupon, the collector caused the containers to be marked, and assessed an additional duty of 10 per centum upon the goods, under said section 304. The importer protested and the United States Customs Court, after hearing testimony, overruled the protest, holding that the duty was properly collected because of the failure to so mark said tubs. The importer has appealed.

In the recent case of Zaloom v. United States, 21 C.C.P.A. (Customs) 518, T.D. 46972, we had said section 304 before us, and at that time quoted the same in full, together with its prototype section from the Tariff Act of 1922. In view of this, it is hardly deemed necessary at this time to again quote the language of these sections in full.

In the Zaloom case, the imported goods consisted of sausage casings, shipped in a barrel, which sausage casings were not capable of being marked. We there held that under the provisions of said section 304 the importer was required to mark his article, his container, and his package, unless the Secretary of the Treasury had, by properly promulgated regulations, excepted the articles in question from marking. We held, further, that the barrel in which the sausage casings were contained was a container within the language of said section 304 (b), and that, the sausage casings not being marked, the importer was required to pay the additional duty of 10 per centum because of the failure to mark his container.

The case now before us is different in some of its aspects: The articles here are marked, while the tubs, which must be considered the containers under the doctrine of the Zaloom case, are not marked. Hence, the question directly arises whether an additional duty may be imposed, under this section, for a failure to mark both the article and the container. In other words, does this section require an additional duty to be imposed when the importer has marked his article and has not marked his container, or vice versa?

[2] HATFIELD, J., did not participate in this case.

The language of the additional-duty clause of section 304 is found in 304 (b). A part of this language is as follows:

SEC. 304. (b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, * * * a duty of 10 per centum of the value of such article * * *.

The ordinary meaning of this language is not that both article and container must be marked or an additional duty will accrue, but that one or the other must be marked or this will happen. If the Congress had been intending to make the additional duty apply for failure to mark both, different language would have been employed. Going, then, no farther than the ordinary meaning of the words extends, it appears that the congressional intent was to make it obligatory, in order to avoid the imposition of additional duty, to mark either the article or the container on every occasion.

Under section 304 of the Tariff Act of 1922, if the article was such that it could not be marked, there was no imposition of additional duty for failure to mark the container. The present act makes it more necessary for the importer to so mark his goods that, when they come into the commerce of this country, they may be readily distinguished.

An examination of the congressional history of this measure throws some light upon the matter. After the passage of the Tariff Act of 1922, many cases arose in the United States Customs Court and were considered here under section 304 of that act. Because of the literal construction of the language of the act by the courts, results were experienced which were thought by those having the administration of the importations into the country to be undesirable. Therefore, we find at the hearing before the Committee on Ways and Means of the House of Representatives, on H.R. 2667, Honorable Ogden L. Mills, Under Secretary of the Treasury, appearing and asking for changes in the marking provisions of the new bill. Page 9748, volumes 16, 17, 18, Tariff Readjustment, 1929. In this statement, the Under Secretary called attention to the fact that a strict construction required the marking of many small articles instead of the commercial unit, and he recommended that power be given to the Secretary of the Treasury, by law, to so administer the law that greater flexibility might be had, and that such power be placed in the hands of the Secretary of the Treasury, instead of depending upon a judicial determination in each case.

It also appears, from the hearings before the Committee on Ways and Means of the House, and the Finance Committee of the Senate, on various occasions, that the effort of the committees was not only to vest this power in the hands of the Secretary of the Treasury, but also to avoid double additional duties and give the act an effect of

compelling marking on what was more apt to come to the public notice, when the goods were brought into the markets of the country. A good example of these discussions is seen in volume 17, pages 55–57 of the Hearings before the Committee on Finance of the Senate on said H.R. 2667. Both committees of the Congress referred to the matter in their reports. The Committee on Ways and Means, in its majority report, made the following observations:

> The section has been rewritten to allow the Secretary of the Treasury to provide for exceptions to the strict requirements and to prescribe the manner of marking. The immediate container of an imported article is also required to be marked in order more effectively to carry out the purpose of the section to apprise the consumer of the foreign origin of the article. Moreover, the foreign origin of all articles which cannot themselves be marked, or the marking of which would be an entirely useless burden upon importation, may nevertheless be indicated by marking the container. (Rept. No. 7, 71st Cong., 1st sess., p. 159.)

The Senate Committee on Finance also reported, in part, as follows:

> * * * The bill as reported provides that the Secretary of the Treasury may except any article from the marking requirements if he is satisfied that the article is incapable of being marked, or cannot be marked without injury, or that the marking of the container alone will be a reasonably sufficient indication of the country of origin of the article. No authority is given to except the container from the requirement for marking, as it is not believed that any case will arise where such exception is required. (Rept. No. 37, 71st Cong., 1st sess., p. 59.)

It seems quite plain that the Congress was attempting to do no more than to secure a proper marking of the imported article or its container in such a way as would make it manifest to the purchaser that the goods were foreign goods.

While under section 304 of the Tariff Act of 1922 the articles must be marked if they were capable of marking, such is not the case under the act of 1930. Division (a) of said section provides:

> * * * The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or cannot be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or *labeling of the immediate container of such article will reasonably indicate the country of origin of such article*. (Italics ours.)

Under this language it seems to have been plainly within the congressional thought that the marking of a container might be amply sufficient, in certain cases, to indicate the country of origin, without a marking of the article itself.

From these considerations, we come to the conclusion that, while the tubs in this case were required to be marked under the plain language of paragraph 304 (c) and our holding in the *Zaloom* case, *supra*, we are of the opinion that no penalty was properly collected because of the absence of such marking in this case.

The judgment of the United States Customs Court is, therefore, *reversed* and the cause is *remanded* for further proceedings in conformity with this opinion.

### CONCURRING OPINION

BLAND, Judge,: I concur in the conclusion reached by the majority because, in this instance, the article was marked, and while the container was not marked, the majority holds that the additional duty does not apply where the article is marked and the container is not marked. I really have the impression that Congress intended to impose the duty if either the container or the article was not marked, but I feel sure that Congress never intended to permit the importation of an unmarked article, without the imposition of the additional duty, if it could be marked without injury, etc., even though the container was marked. If no duty is imposed for failing to mark an article, it seems certain that Congress has departed from the well-known policy of requiring imported articles to be marked.

Under this decision and the decision handed down concurrently herewith, *Givaudan Delawanna, Inc.* v. *United States*, 22 C.C.P.A. (Customs) 115, T.D. 47104, great boxes of metal castings may come into this country unmarked, and if all of them are not examined by the customs officials, they may go to the consumer without being marked. The importer runs no risk of incurring additional duty and, therefore, the purpose of Congress is not furthered. Of course it intended the article and container both to be marked. As to whether it intended the additional duty to apply for failure to mark the container if the article was marked, there is reasonable grounds for difference of opinion, but, in my judgment, there is no justification for a conclusion that Congress intended that no additional duty should apply if the article was not marked and was capable of being marked. My views are more fully expressed in the case of *Givaudan Delawanna, Inc.* v. *United States, supra*.